UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY VANDIVER, #141306

        Plaintiff,

vs.

CAROLYN WILLIAMS, CHARLENE CARBERRY,
MELANIE FRANK AND JOY ANDERSON,

        Defendants.
        _____/

Case No. 05-73342

Honorable George Caram Steeh
Magistrate Judge Steven D. Pepe

## REPORT AND RECOMMENDATION

On August 30, 2006, Plaintiff, a prisoner incarcerated in the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility, in Kincheloe, Michigan, filed a complaint against Defendants Carolyn Williams, Charlene Carberry, Melanie Frank, and Joy Anderson, all in their individual and official capacities, pursuant to 42 U.S.C. § 1983.[1] Defendants filed a Rule 12(b)(6) motion for dismissal and summary judgment on November 15, 2005. (Dkt. # 14). Plaintiff submitted a brief in opposition to Defendant's motion for summary judgment and dismissal on December 14, 2005. (Dkt. # 16). All pretrial proceedings have been referred pursuant to 28 U.S.C. 636 (b)(1)(B). For the reasons stated below, IT IS RECOMMENDED that Defendants' motion be GRANTED.

**I.   BACKGROUND**

Plaintiff alleges that he and Prisoner Jones were assigned together in a unit on or about

---

[1]Although Plaintiff Vandiver refers to Defendant Melanie Frank as "Franks", the Defendants' motion for dismissal and summary judgment list Defendant as "Melanie Frank". (Dkt. #14).

January 11, 2005. (Dkt. #1, p. 3-4). Plaintiff claims that Defendants Frank and Anderson, Regular Unit Correctional Officers (RUO), interviewed Prisoner Jones regarding "Prisoner Gossip" that Plaintiff was a "homosexual predator" and a threat to Jones' security. (Dkt. #1, p. 4). Plaintiff claims this gossip was unfounded, and that Defendants Frank and Anderson subsequently conspired with Assistant Resident Unit Manager Defendant Williams to have Prisoner Jones transferred due to concerns for Jones' safety. According to Defendants Williams and Frank, Prisoner Jones was transferred shortly after being selected at random by the transfer coordinator to accommodate the facility's conversion. (Dkt. 13, Ex. D).

On January 18, 2005, after Prisoner Jones' transfer, Plaintiff filed a grievance against Defendants Anderson, Frank and Williams claiming Defendants Anderson and Frank had defamed his character and placed a SPON in his file indicating he was a homosexual predator, and that Defendant Williams had "demonstrated a vendetta" against him. (Dkt. 1, Ex. A). Plaintiff also claimed he should have been awarded an administrative hearing to address the alleged defamation of character. Defendants denied calling Plaintiff a homosexual predator or that there was any information in his file indicating they did. (Dkt. #14, p. 2).

Plaintiff admits he confronted Defendants Anderson and Frank about the "Prisoner Gossip," and alleges that Defendants stated to Plaintiff, "We are going to get you moved out of this prison." (Dkt. 1, p. 5). On January 25, 2005, Plaintiff received a Notice of Intent to Classify to Administrative Segregation ("NOI") that stated since Prisoner Jones' transfer Plaintiff had been argumentative and confrontational with Defendants Anderson and Frank and had accused Defendant

2

Williams of placing negative paperwork in his file.[2] (Dkt. 1, Ex. B). According to the NOI, Plaintiff stated that this time he was documenting what happened to him and he "has shown restraint for now, but he doesn't know how much longer he can hold back" and that he requested a transfer to another facility "before things get out of hand." (Dkt. #13, Ex. A, p. 4; Dkt. #1, Ex. B).

Plaintiff claims that the Defendants further conspired to have him transferred by using the disciplinary process to "get him into pre-detention in violation of policy and custom and the Constitution of the United States in retaliation for his filing grievances and reflecting an agreement to transfer Plaintiff...was the motivating factor behind the real reason for transferring him." (Dkt. #16, p. 4).

Defendant Williams claims she wrote the NOI to limit Plaintiff's movement in the institution because he posed a threat to the Anderson and Frank, and that she notified the mental health team about his behavior. (Dkt. #13, Ex. D, p. 4). According to Defendant Williams, due to Plaintiff's hostile attitude toward staff, Plaintiff was subsequently placed in segregation pending a transfer to another facility. (Dkt. #13, Ex. A, p. 2-5).

On January 26, 2005, one day after being placed into temporary segregation, a Critical Incident Report was filed stating Plaintiff broke a window in his cell. (Dkt. #13, Ex. A, p. 7-9).

---

[2]According to MDOC Policy Directive 04.05.120(I), "[a]dministrative segregation is the most restrictive level of security classification."  04.05.120(J) states: "A prisoner may be classified to administrative segregation only for the following reasons:
> 1. The prisoner demonstrates an inability to be managed with general population privileges;
> 2. The prisoner is a serious threat to the physical safety of staff or other prisoners or to the good order of the facility;
> 3. The prisoner is a serious escape risk;
> 4. The prisoner is under investigation by an outside authority for suspected felonious behavior;
> 5. The prisoner tests positive for HIV infection and is subsequently found guilty of a major misconduct for behavior which could transmit HIV infection..."

3

When Sergeant D. Austin asked Plaintiff to turn over his cane, Plaintiff stated "he did not break the window with his cane but broke it with his foot. He then placed his foot up on the glass and showed how he did it." (Dkt. #13, Ex. A, p. 9).

Plaintiff filed another grievance on February 17, 2005, stating he was placed into segregation based on a falsified NOI, denied the limited rights and privileges of other prisoners as a result of the segregation, and not provided a hearing, as required under MDOC policy for Administrative Segregation. (Dkt. #1, Ex. C).[3] According to Defendant Carberry, Deputy Warden at Macomb Correctional Facility, Plaintiff's NOI to Classify to Administrative Segregation was dismissed when Plaintiff was placed in segregation pending a transfer. (Dkt. #13, Ex. A, p. 1-2). Policy Directive 04.05.120, paragraph F states: "Temporary segregation is used when it is necessary to remove a prisoner from general population pending a hearing for a major misconduct violation, classification to administrative, protective segregation or transfer."[4] (Dkt. #13, Ex. B, p. 2-3). Therefore, Defendant Carberry, maintains that Plaintiff was not entitled to a hearing pending transfer to another facility under 04.05.120. (Dkt. #13, Ex. A, p. 2-3).

Plaintiff was transferred from the Macomb Correctional Facility to Chippewa Correctional Facility (Dkt. 14, p. 1) and is now incarcerated at G. Robert Cotton Correctional Facility in Jackson, Michigan. (Dkt. #19).[5]

---

[3] Both Plaintiff and Defendant state in their briefs that Plaintiff filed this grievance on January 25, 2005. (Dkt. #16, p. 2 & Dkt. 14, p. 2). This appears to be a mistake. Although the alleged incident occured on January 25, 2005, the attached grievance is dated February 17, 2005. (Dkt. #1, Ex. C). Plaintiff does reference the grievance correctly in Dkt. #1, p. 6.

[4] Although Plaintiff also attaches a copy of Policy Directive 04.05.120, it is missing paragraph F. (Dkt. #1, Ex. E).

[5] Neither party state in their documents the exact date that Plaintiff Vandiver was transferred to Chippewa Correctional Facility. The last documents reported from the Macomb Correctional Facility are

**II.     LEGAL STANDARD**

A court considering a motion to dismiss under Rule 12(b)(6) "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 619 (6th Cir. 2002) (citing *Turker v. Ohio Dep't. of Rehab. & Corr.,* 157 F.3d 453, 456 (6th Cir.1998)). "Dismissal of the complaint is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 855 (6th Cir. 2003) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

In applying these standards, the court must read plaintiff's pro se complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Rules 12(b) and (c) of the Federal Rules of Civil Procedure provide that if, on a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment and disposed of as provided in Rule 56.

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact.  The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

---

dated January 26, 2005 when Plaintiff was placed in temporary segregation pending his transfer. (Dkt. #13, Ex. A, p. 6-20). Subsequently, Plaintiff filed a Grievance Form on February 17, 2005, stating that the delay in filing the report about the January 25, 2005 incident was because he "was transferred to another facility at URF". (Dkt. #1, Ex. C). In Defendant Carberry's affidavit, she refers to the Chippewa Correctional Facility as URF. (Dkt. #13, Ex. A, p. 2).

5

The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also, Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). Once the moving party has satisfied the initial burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party's failure to "make a sufficient showing to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial" will result in dismissal of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. ANALYSIS

### A. Retaliation

A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394. The plaintiff has the burden of proof on all three elements. Thus, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Plaintiff met the first element of engaging in protected conduct when he filed the grievance against the Defendants. *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir.1996) (inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf).

Plaintiff asserts that Defendants took adverse action against him by placing him in segregation, and later transferring him to Chippewa Correctional Facility, on false charges without a hearing, in retaliation for his filing of the grievance. (Dkt. #1, p. 6, Dkt. #16, p. 18).  Yet, Plaintiff blurs the distinction as to whom did what and when.

On January 18, 2005, Plaintiff filed a grievance against Defendants Anderson, Frank and Williams claiming Defendants Anderson and Frank had defamed his character and placed a SPON in his file indicating he was a homosexual predator (Dkt. 1, Ex. A).  The latter is denied and Plaintiff has not demonstrated any of his prison documents showing he was stated to be a homosexual predator or that Defendants Anderson or  Frank  were involved in it.  There are no specifics of any subsequent adverse actions by Defendants Anderson or Frank  The grievance also alleged  that Defendant Williams had "demonstrated a vendetta" against him.  There are no specifics on this. Later Williams was involved in initiating the NOI .  Plaintiff, in another grievance on February 17, 2005, stated he was placed into segregation based on a falsified NOI, denied the limited rights and privileges of other prisoners as a result of the segregation, and not provided a hearing, as required under MDOC policy for Administrative Segregation. (Dkt. #1, Ex. C).  Apparently Defendant Williams was involved in initiating this NOI.  Yet, other than it following the "vendetta" grievance – which appears groundless and not one likely to trigger retaliation – there is nothing to relate Williams NOI action with the grievance.  Defendant Williams claims she wrote the NOI to limit Plaintiff's movement in the institution because he posed a threat to the Anderson and Frank, and

7

that she notified the mental health team about his behavior. (Dkt. #13, Ex. D, p. 4). According to Defendant Williams, due to Plaintiff's hostile attitude toward staff, Plaintiff was subsequently placed in segregation pending a transfer to another facility. (Dkt. #13, Ex. A, p. 2-5) According to Defendants Williams and Frank, Prisoner Jones was transferred shortly after being selected at random by the transfer coordinator to accommodate the facility's conversion. (Dkt. 13, Ex. D). Plaintiff had provided nothing to counter this "random" selection. Carberry states Plaintiff was placed in segregation pending a transfer to another facility due to concerns about the "security of this institution" and Plaintiff's mental health condition. Regarding Williams and Carberry's statements regarding threats and security concerns, Plaintiff has admitted he confronted Anderson and Frank, and defendant subsequently admitted he broke out a segregation cell window with his foot. (Dkt. #13, Ex. A, p. 9). According to Defendant Carberry the Williams NOI to Classify to Administrative Segregation was dismissed when Plaintiff was placed in segregation pending a transfer. (Dkt. #13, Ex. A, p. 1-2).[6]

Other than the timing of the incidents, Plaintiff has failed to demonstrate a causal connection between his filing the grievance and his transfer to Chippewa Correctional Facility. There does not appear to be any adverse action taken by Defendants Anderson and Frank. Regarding defendant Williams' NOI and the related segregation – until the segregation was because of the impending transfer – there is not sufficient evidence in this record to allow a jury to find that this action – which had temporary consequences only – was in retaliation for the "vendetta" grievance. Defendants

---

[6] "If defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X v. Blatter*, 175 F.3d at 399 (citing *Mt. Healthy City School District Board of Education v. Doyle,* 429 US 274 (1977)).

8

have produced evidence of Plaintiff's erratic behavior, questionable mental status and concern for guard safety that would warrant Plaintiff's segregation or transfer to another facility through affidavits, incident reports, and the NOI. (Dkt. #13, Ex. A, C, D & E).[7]

Defendants argue that no adverse action was taken in response to Plaintiff filing a grievance, and that Plaintiff was transferred for outpatient treatment of his mental health condition and the safety threat he posed to prison staff, specifically Anderson and Frank. (Dkt. #13, Ex. D, p. 4). Also according to Defendant Carberry, only three other facilities could house Plaintiff due to his conditions and need for a barrier free institution due to his cane, and two of the facilities did not have space available. (Dkt. #14, p. 6). Plaintiff has provided no evidence to counter these assertions.[8] Thus, there is insufficient evidence for the Plaintiff to create a genuine issue of material

---

[7] Exhibit A contains the affidavit of Defendant Carberry stating Plaintiff was placed in segregation pending a transfer to another facility due to concerns about the "security of this institution" and Plaintiff's mental health condition. (Dkt. #13, Ex. A, p. 2-3). Exhibit A also includes the Notice of Intent to Classify to Administrative Segregation, which documents Plaintiff's accusations and argumentative behavior, the order to keep Plaintiff in segregation pending his transfer, and the Critical Incident Report documenting Plaintiff breaking the cell window with his cane or foot. (Dkt. #13, Ex. A, p. 4-5, 7-9). Exhibit C contains Defendant Joy Anderson's affidavit stating she did not conduct an investigation to determine whether Plaintiff was a homosexual predator and had no authority to transfer prisoners based on prisoner gossip. (Dkt. #13, Ex. C, p. 2). Exhibit D contains the affidavit of Defendant Carolyn Williams which states that Prisoner Jones was selected randomly to be transferred to accommodate a housing conversion, that Plaintiff "become increasingly hostile toward RUO Frank and RUO Anderson", that the mental health team "expressed concern about his behavior especially anger directed at me and RUO Anderson and RUO Frank," and that she filed the NOI because "I felt he posed a definite threat to staff." (Dkt. #13, Ex. D, p. 2-4). Exhibit E contains the affidavit of Defendant Melanie Frank stating that her and Defendant Anderson did not conduct an investigation into any prison gossip and that Plaintiff was hostile towards herself and Anderson and accused them of being responsible for prisoner Jones' transfer. (Dkt. #13, Ex. E, p. 2-3).

[8] As stated above, once the moving party has satisfied the initial burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party's failure to "make a sufficient showing to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial" will result in dismissal of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. at 322.

9

fact regarding Plaintiff's retaliation claim that would justify submitting this claim to a jury.

Accordingly, Plaintiff's retaliation claims should be dismissed, because he is unable to provide evidence of a causal link that would allow a rational fact-finder to find that the grievance he filed caused Defendants to retaliate by placing him in segregation or initiating the transfer.

**B. Conspiracy**

In order to state a valid claim of conspiracy, a plaintiff must allege: 1) that there was a single plan; 2) the alleged co-conspirators shared a general objective; and 3) that an overt act was committed in furtherance of the conspiracy. *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000). Plaintiff argues that the Defendants "assisted each other in performing the various actions described and lent their physical presence and support and authority of their office to each other" to retaliate against him for filing a grievance and falsified information to have him placed in segregation and transferred. (Dkt. #1, p. 7).

As he did with regard to his retaliation claim, Plaintiff has produced no evidence or pointed to any of the Defendants' actions, besides the timing of the transfer in relation to the grievance, that would support any of the three elements laid out by the *Weberg* court.

Conclusory assertions that defendants were acting in concert do not meet the requirement that allegations of a conspiracy be pled with some degree of specificity. *See Gutierrez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir. 1987); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) ("It is not enough for a complaint . . . to contain mere conclusory allegations . . . . Some factual basis for such claims must be set forth in the pleadings."). Because Plaintiff has only made conclusory allegations of a conspiracy, these claims should be dismissed.

10

**C. Due Process/Liberty**

For the reasons stated above, Plaintiff's Liberty and Due Process rights were not implicated by Defendants denying Plaintiff a hearing on the NOI to Classify Administrative Segregation because the NOI was ultimately dismissed. Plaintiff was later placed in temporary segregation pending his transfer to another facility to receive mental health treatment and for concern for staff safety and a hearing is not required pending a transfer to another facility. (Dkt. #13, Ex. A, p. 2-3).

In fact, even without considering the undisputed fact that Plaintiff was not entitled to hearing simply by virtue of his transfer to a new facility, his Due Process and Liberty arguments are without merit for three reasons.

First, placement in administrative segregation does not automatically give rise to a protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997); *Bennett v. Smith*, 110 Fed. Appx. 633, 634 -635 (6th Cir. 2004). "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty', *see, e.g., Vitek v. Jones*, 445 U.S. 480, 493-494, (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution), "or it may arise from an expectation or interest created by state laws or policies, see, e.g., *Wolff v. McDonnell*, 418 U.S. 539, 556-558, (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)." *Wilkinson v. Austin*, 125 S.Ct. 2384, 2393 (2005).

Plaintiff relies solely upon the mandatory language of MDOC regulations concerning

placement into administrative segregation to support his claim of a liberty interest.[9]

> However, the Supreme Court in *Sandin* ... instructed that a state regulatory scheme does not create a liberty interest merely because the regulations incorporate 'language of an unmistakably mandatory character.' Apart from any mandatory language in a regulation, the plaintiff must also prove that he suffered restraint which imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'

*Rimmer-Bey v. Brown*, 62 F.3d 789, 790-791 (1995)(6th Cir. 1995).[10]

Here, Plaintiff has not alleged that he suffered any restraint which imposed an atypical or significant hardship in relation to his ordinary sentence. The Sixth Circuit has repeatedly held that placement into administrative segregation is not a qualifying hardship. *Mackey*, 111 F.3d 460; *Rimmer-Bey*, 62 F.3d 789. Therefore, Plaintiff's liberty claim should be dismissed as his placement into administrative segregation did not implicate a protected liberty interest.

Last, to rule in Plaintiff's favor would "run counter to the view expressed in several [United States Supreme Court] cases that federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment. *Wolff*, 418 U.S., at 561-563, 94 S.Ct., at 2977-2978; *Hewitt*, 459 U.S., at 470-471, 103 S.Ct., at 870-871; *Jones v. North Carolina Prisoners'*

---

[9]To the extent Plaintiff intended to plead that the Due Process Clause inherently gives rise to a protected liberty interest in his freedom from administrative segregation, that argument would have failed as well as "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin, 515 U.S. at 478; see also, Meachum v. Fano*, 427 U.S. 215 (1976)(no liberty interest where prisoner transferred to a maximum security facility); *Wolff v. McDonnell*, 418 U.S. 539 (1974)(no liberty interest in credit for good behavior); *but see, Vitek v. Jones*, 445 U.S. 480, 493-494 (1980)( Due Process Clause provides liberty interest in avoiding involuntarily transfer to a state mental hospital as sentence was then "qualitatively different" and had "stigmatizing consequences." ); *Washington v. Harper*, 494 U.S. 210, 221-222 (1990)(liberty interest in being protected from the involuntary administration of psychotropic drugs).

[10]With regard to Plaintiff's claim that his classification under temporary segregation was unconstitutional (Dkt. #1, p. 14), it should be noted that MDOC Policy Directive 04.05.120(G) states that prisoners may be designated under temporary segregation in connection with a transfer and notice need not be given to the prisoner. There is also no hearing required for classification in temporary segregation as long as the confinement does not exceed 7 business days.

*Labor Union, Inc.*, 433 U.S. 119, 125, 97 S.Ct. 2532, 2537-2538, 53 L.Ed.2d 629 (1977)." *Sandin*, 515 U.S. at 483.

As the *Sandin* Court pointed out, "such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims since *Hewitt*. *See, e.g., Klos v. Haskell*, 48 F.3d 81, 82 (CA2 1995) (claiming liberty interest in right to participate in "shock program"--a type of boot camp for inmates).

Here, a prisoner classified under MDOC's most restrictive security classification was transferred to another MDOC facility. Applying proper deference and flexibility to MDOC's actions it is clear that an accepting facility should be allowed to maintain such a classification pending their own Security Classification Committee's review of the situation and before releasing the prisoner into general population - this can only be considered an ordinary incident of prison life.

### D. Qualified Immunity

Defendants claim they are entitled to qualified immunity because Plaintiff has failed to demonstrate a deprivation of an established statutory or constitutional right. (Dkt. #14, p. 17-18).

> In civil suits for money damages, government officials acting in their official capacity are entitled to qualified immunity for discretionary acts which do not violate clearly established law of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). ... The Supreme Court has recently clarified that, in order to assess whether the defendants-officials in this case should be cloaked with immunity from suit, we must engage in a two-part, sequential analysis: first, we must determine whether the plaintiff has alleged facts which, when taken in the light most favorable to [him], show that the defendant-official's conduct violated a constitutionally protected right; if we answer the first question in the affirmative, we must then determine whether that right was clearly established such that a reasonable official, at the time the act was committed, would have understood that his behavior violated that right. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

13

*Comstock v. McCrary*, 273 F.3d 693, 701-702 (2001)(6th Cir, 2001).

In the present case, the Plaintiff fails to meet the first step. As discussed above, Plaintiff had no constitutional right to remain free from administrative segregation at any time during his confinement and no right to a hearing once his NOI to Classify to Administrative Segregation was dismissed and he was placed in temporary segregation for misconduct. (Dkt. # 13, Ex. A, p. 5 & 7-9). Therefore, Defendants did not violate any of Plaintiff's constitutional rights, which moots the clearly established law issue under the test set out by the court in *Anderson*. Defendants do not need qualified immunity for their discretionary acts because they were not unconstitutional.

### III. RECOMMENDATION

For the reasons stated above, IT IS RECOMMENDED that Defendant's Motion be GRANTED.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless

by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: July 24, 2006                              s/Steven D. Pepe
Ann Arbor, Michigan                               United States Magistrate Judge


## Certificate of Service

I hereby certify that a copy of this Order was served upon the attorneys and/ or parties of record by electronic means or U. S. Mail on July 24, 2006.


                                                  s/Deadrea Eldridge
                                                  Courtroom Deputy Clerk